UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA,    )
                             )
                             )
         v.                  )    CRIMINAL ACTION NO.
                             )    10-10250-DPW
                             )
                             )
NANCY GRAY,                  )
                             )
     Defendant.              )


                        MEMORANDUM AND ORDER
                          December 6, 2013

     By Order dated March 12, 2013, I allowed - on the eve of trial - the defendant's motion (#91) for certain professional fees at reasonable rates and not to exceed the estimates of $3,000.00 for Dr. Julia Reade, a psychiatric expert, and of $1,250.00 for Timothy Creamer, an investigator.  Following the trial, the defendant moved (#127) for payment to Mr. Creamer in the amount of $2,130.00.

     At the sentencing hearing in the case on July 12, 2013, I advised defense counsel that the rates reflected on the invoices submitted by the professionals were "high."  I observed that "I did give authorization for a certain level that you asked for, but I conditioned it on the rates being reasonable.  And the *nunc pro tunc* quality of this is not one that I'm going to find acceptable, I think, at this stage."  (#181, 7/21/13 Tr. at 1).

Nevertheless, I afforded counsel the opportunity to make further submission in support of the payments. In that connection, I explained that "reasonable rates are the ones that the Committee for Public Counsel Services applies."[1] As reported in the transcript, I observed in the case of a psychiatrist this would be $275.00 per hour,[2] and not the $375.00 per hour sought by Dr. Reade; in the case of an investigator this would be $50.00 and not the $85.00 per hour sought by Mr. Creamer. *Id.* at 1-2.

In a Second Memorandum (#161) in support of funds for additional investigative services and payment of Psychiatrist, defense counsel noted that when authorizing the funds initially I had not provided advance notice of what precisely might be reasonable and that while the rates for Dr. Reade exceeded the CPCS rate, her total voucher claim was under the $3,000.00 total I authorized.

---

[1] In part to avoid the potential for abuse of the reimbursement process that the instant request illustrates, this court formally issued "Guidelines For Claims Submitted For Reimbursement Under the Criminal Justice Act," on November 14, 2013 to make explicit certain long standing customary practices; as particularly relevant here, these include that presumptive rates are those published by the Committee for Public Counsel services. *Id.* at § 4.6.

[2] This appears to be a typographical error in the transcript – or perhaps I misspoke – since the maximum CPCS rate for a psychiatrist is $225.65 per hour, as reflected in the CPCS "Qualifications and Rates For Investigators, Social Service Providers and Expert Witnesses - December 19, 2011" to which I was referring when making my observations.

As to Mr. Creamer, counsel reported in the second memorandum that other judges of this court had authorized an $85.00 hourly rate for his services and that she was not aware until advised on July 12, 2013 that I viewed the rate as too high.  But she stated that now that she was "aware, she will be able to accommodate for that in the future but hopes the Court will allow the fees at this time given the defense's justifiable reliance and the fact that the fees incurred were very necessary for the defense in this case."  As to the *post hoc* quality of the increased claim, counsel reported that the pretrial estimate had been overtaken by events and that  "given the dynamics of trial with changes in witnesses even at the last minute, additional hours were necessary for an effective defnese (sic)."

Having authorized as much as $3,000.00 for Dr. Reade's services, I allowed her invoice despite the excessive hourly rate on which it was based.

With respect to Mr. Creamer's invoice, I approved the authorized $1,250.00 for payment.  Mr. Creamer continues, however, to press for the additional $858.00, not previously authorized.  If I were to make use of the customary CPCS rate, Mr. Creamer would have been entitled only to $1,240.00, slightly less than what was approved when I endorsed payment for the

amount initially requested.[3]  I decline, however, to approve anything beyond what was authorized.

The services are reported on the voucher to have been provided between February 23, 2013 (before the authorization was in fact given on March 12) and March 19, 2013 (before the second day of trial and only seven days after the authorization). There is no good reason why authorization for funds in excess of those previously authorized could not have been sought in a more timely manner, or estimated with greater accuracy given this compressed time frame.

It is the duty of counsel to supervise the activities of the professionals they engage to assist them.  Adequate supervision assumes thoughtful budgeting estimates and requires that when funds beyond those authorized are to be sought, they should be sought at the earliest point at which their necessity is identified.[4]  Absent exigent circumstances, professionals may not expect payment for services unless authorized in advance.  The neglect of counsel to provide adequate supervision will not excuse *ex post* submission of invoices by professionals.  The

---

[3] That payment also included travel expenses in the additional amount of $22.00.

[4] *See* "Guidelines" at § 4.3 "[a]ny request seeking *nunc pro tunc* authorization for services rendered will not be approved absent a finding by the court, upon good cause, that timely procurement of such services could not reasonably await prior authorization."

consequences of a failure in supervision are matters between counsel and the professionals they choose.  For its part, especially in this austere budgetary environment, the court cannot and will not be positioned to pay public funds for something it never authorized or was even asked to authorize until well after the expenses were incurred.

Accordingly,  I DENY the belated requests (##127 and 161) for authorization for services and expenses not previously or otherwise authorized.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT